James T. CAVER, Petitioner-Appellant,

v.

STATE OF ALABAMA,
Respondent-Appellee.

No. 75-3702.

United States Court of Appeals,
Fifth Circuit.

Sept. 2, 1976.

Rehearing Denied Oct. 12, 1976.

**1334**

Richard H. Gill, Montgomery, Ala. (Court-appointed), for petitioner-appellant.

William J. Baxley, Atty. Gen., Charles L. Little, Eric A. Bowen, Asst. Attys. Gen., Montgomery, Ala., for respondent-appellee.

Before RIVES, GOLDBERG and GEE, Circuit Judges.

RIVES, Circuit Judge:

This state prisoner's petition for habeas corpus comes to this Court by appeal for a second time. Petitioner, James T. Caver, was convicted of second degree murder in the Circuit Court of Calhoun County, Alabama, and was sentenced to imprisonment for 50 years. Caver's petition alleges: (1) that his initial arrest for vagrancy was pretextural and, hence, illegal, so as to make all of the subsequently obtained evidence inadmissible as tainted fruit of the poisonous tree; and (2) that he was subjected to a counselless line-up which was unduly suggestive. In our earlier *per curiam* opinion, this Court vacated the district court's summary dismissal of the petition and remanded for an evidentiary hearing on the issues raised by petitioner. *Caver v. Alabama* , 5 Cir. 1974, 511 F.2d 124, 126.

On remand, a hearing was held before the Honorable Robert E. Varner, Judge of the Middle District of Alabama. Testimony and arguments were heard on the issues of the legality of Caver's arrest and the suggestiveness *vel non* of the line-up at which Caver and his accomplice, Jerry White, were identified by witnesses who later testified at trial against the defendants. Counsel for the State contended that Caver was lawfully arrested for murder and robbery and not for vagrancy. The convictions of Caver and White in state court were premised on the fact that their initial arrest was for vagrancy. *See White v. State*, 1972, 48 Ala.App. 334, 264 So.2d 565, 566; *Caver v. State*, 1973, 50 Ala.App. 181, 277 So.2d 926. Moreover, Caver's federal habeas corpus petition had proceeded until that time on the assumption by all parties that his original arrest was for vagrancy. See Appellee's Brief at 10. Judge Varner, nevertheless, allowed the State to proceed upon its substituted theory.

On the issue of suggestiveness *vel non* of the line-up, petitioner Caver testified that there were four persons in the line-up other than Jerry White and himself. Those persons were described by Caver as "dirty, nasty; they hadn't shaved, they had cotton

and lint in their hair." Caver testified that all four of them had come directly from the jail to the line-up and were wearing "more or less" jailhouse clothing. In contrast to these individuals, Caver was clean in appearance, had recently shaved, and was wearing a knitted sweater, a pair of dress slacks, and dress shoes. There is also evidence in the record that the other participants in the line-up and the codefendants, Caver and White, had age and weight differences. However, Judge Varner ruled that this line-up was not so unduly suggestive as to violate due process.

In the present appeal, Caver contends that the district court violated the mandate of this Court's earlier opinion and/or the law of the case when it allowed the State to proceed under its new theory that the initial arrest was for murder and robbery.[1] Petitioner further contends that the district court erred when it found that the line-up was not unduly suggestive.

### I. Suggestive Line-up

■ An identification procedure that is unnecessarily suggestive and conducive to irreparable mistaken identification violates due process of law. *Stoval v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). A "totality of the circumstances" test was fixed as the standard for deciding such contentions. 388 U.S. at 302, 87 S.Ct. 1967. In *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), the Court held that a line-up is unduly suggestive when it is virtually inevitable that the witness will select the individual whom the police have singled out. This rule, unlike the exclusionary rule of the Fourth Amendment, is aimed not at deterring unfair police practices but at the reliability *vel non* of the truth-finding process. See 394 U.S. at 440, 89 S.Ct. 1127. As a general principle, it is for the jury, the factfinder in our

criminal process, to weigh the reliability of evidence and the credibility of witnesses. Only when the eyewitness identification is unreliable because of suggestive line-up procedures should a court rule that the evidence is constitutionally inadmissible as a matter of law. *Foster v. California, supra,* at 442–443 n. 2, 89 S.Ct. 1127. The district court placed great weight on the fact that petitioner's contentions in regard to the suggestiveness of the line-up all related to appearance. The identifying witnesses, with the exception of Willie Johnson, identified each of the codefendants on the basis of his voice and not his personal appearance. Johnson, who did identify from appearance, testified that he had previously met White and had known Caver for years. Relying on this evidence, the district court concluded that the identification was not unreliable due to any suggestiveness in appearance. We agree. While the procedures used at this line-up are subject to criticism, we are convinced that no miscarriage of justice occurred in this case.

### II. Petitioner's Initial Arrest

■ The question of the legality *vel non* of petitioner's initial arrest has become less important due to a recent Supreme Court decision. *Stone v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d ——, 44 U.S.L.W. 5313 (1976). We, therefore, find it unnecessary to decide whether the district court violated the mandate of this Court's prior opinion and/or the law of the case when it allowed the State to justify the arrest as one for murder and robbery. Even if evidence admitted at Caver's trial was the product of an illegal arrest, Caver can no longer collaterally attack his conviction on the basis of such a fourth amendment violation. Under *Stone v. Powell, supra*, a state prisoner can raise such a fourth amendment claim in a federal habeas pro-

1. The mandate dated May 2, 1975 of this Court in *Caver v. Alabama* reads: ". . . this cause be, and the same is hereby remanded to the said District Court in accordance with the opinion of this Court." The opinion instructed the district court to obtain on remand the transcript of the joint trial of Caver and White "to

consider whether all or any part of *the contentions raised by Caver* have been exhausted in the courts of the State of Alabama." 511 F.2d at 126 (Emphasis added). Under appellant's reading of the mandate, the inquiry of the district court on remand would be confined solely to the contentions of the petitioner.

ceeding only upon a showing that the state failed to provide him with an opportunity for full and fair litigation of his claim. Difficult as it may be for a state prisoner to meet such a burden, the petitioner should be given a chance to be heard upon the legal standard announced in *Stone v. Powell*.[2] For that reason, dismissal is vacated and the case is remanded for further proceedings in the light of *Stone v. Powell, supra.*

VACATED AND REMANDED.

**2.** When this appellant's petition was prepared, he could not have known that his sole prospect of habeas relief lay in a claim that he did not have a fair opportunity to litigate his fourth amendment claim in Alabama courts. Under these circumstances, the case should be remanded to allow appellant to address the requirements of *Stone v. Powell*, —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d ——, 44 U.S.L.W. 5313 (1976). But in future applications of *Stone v. Powell, supra,* no such remand will be required. Rather the burden will be on a petitioner to plead and prove at the federal trial level a want of opportunity fairly and fully to litigate any fourth amendment claim in the state courts.