# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10264
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 7, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSE JUAN HERNANDEZ,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-921

Before PRADO, OWEN, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Jose Juan Hernandez, federal prisoner # 38507-177, appeals the district court's denial of his 28 U.S.C. § 2255 petition for post-conviction relief. For the following reasons, we affirm the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

In 2007, Drug Enforcement Administration ("DEA") agents began investigating Hernandez's brother, Angel Hernandez, for suspected drug trafficking in the Dallas, Texas area. In the course of their investigation, the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

DEA agents obtained court approval to intercept telephone calls to and from Angel's cellular phone. During some of the intercepted calls, Angel discussed various drug transactions with individuals interested in purchasing illegal narcotics. These calls also indicated that both Hernandez and Angel's then girlfriend, Ana Cornelio, were involved in the drug trafficking operation.

In addition, the DEA learned that Angel drove a 2002 maroon Chevrolet Silverado pickup truck, which he used in the drug trafficking operation. This truck was registered in Angel's name, who was its primary driver, although Cornelio also drove the truck on occasion.

In the early morning of February 13, 2008, one of the investigating DEA agents installed a battery-operated GPS tracking device on the undercarriage of Angel's truck while it was parked on a public street outside of Angel's residence. The device emitted a signal, which the agents could manipulate to "ping" every fifteen minutes to two hours, thereby permitting them to track the truck within fifty yards of its location. The agents did not obtain a warrant to install the GPS device based on their understanding that a warrant was not required.

Two days after the GPS device was installed, DEA agents intercepted phone calls between Angel and Hernandez, which indicated that Hernandez was driving Angel's truck to California to pick up a shipment of drugs for the trafficking operation. The agents used the GPS device on Angel's truck to confirm that the truck was indeed heading westbound toward California. As a result, the DEA informed agents in California about the ongoing investigation. The California DEA agents then used the GPS tracking information to locate the truck and initiate visual surveillance.

During the course of their visual surveillance, the agents followed the pickup truck to a hotel, observed Hernandez load several packages into its bed, and then leave. They then contacted local California state patrol officers, who

stopped Hernandez based on a traffic violation. After he was stopped, Hernandez consented to a search of the vehicle, which uncovered 20 pounds of methamphetamine hidden in the packages that were in the bed of the truck. Hernandez was charged in federal court with one count of conspiracy to possess with intent to distribute and distribution of more than 500 grams of methamphetamine in violation of 21 U.S.C. § 846.

Before the district court, Hernandez moved to suppress the evidence that was obtained as a result of the search and seizure of the truck arguing, *inter alia*, that the use of the GPS device violated his 4th Amendment rights. The district court denied Hernandez's motion, relying on this Court's decision in *United States v. Michael*, 645 F.2d 252 (5th Cir. 1981) (en banc). Hernandez then entered into a conditional guilty plea, which reserved his right "to challenge the voluntariness of his plea of guilty" and "to appeal the Court's decision to overrule his pre-trial motions."[1] He was then sentenced to 188 months of imprisonment and a three-year term of supervised release. This Court confirmed Hernandez's conviction on appeal based in part on its earlier en banc decision in *Michael*. *See United States v. Hernandez*, 647 F.3d 216, 220-21 (5th Cir. 2011).[2]

After Hernandez's conviction became final, the Supreme Court issued *United States v. Jones*, ___ U.S. ___, 132 S.Ct. 945 (2012), which held that the

---

[1] The government argues that the conditional plea into which Hernandez entered preserved Hernandez's right to challenge the denial of his suppression motion on direct appeal but waived the right to challenge it in a subsequent collateral proceeding. Because we need not decide this issue to resolve the appeal, we assume that a conditional guilty plea may preserve an issue raised in a pretrial motion for subsequent review in a § 2255 proceeding and that Hernandez did not waive this challenge when he pleaded guilty in this case.

[2] The Court determined that Hernandez lacked standing to challenge the installation of the GPS device on Angel's truck but could challenge the subsequent use of the device to monitor its path when Hernandez was driving the truck with Angel's permission. *See Hernandez*, 647 F.3d at 220. Hernandez has not challenged this aspect of the Court's decision.

installation and subsequent use of a GPS tracking device to an individual's vehicle constitutes a search or seizure within the meaning of the 4th Amendment.  Hernandez then filed the § 2255 petition that forms the basis of the instant appeal, seeking to vacate his conviction.  In his petition, Hernandez argued that under *United States v. Jones*, the evidence that was obtained as a result of the government's warrantless use of the GPS device should have been suppressed because it was obtained in violation of the 4th Amendment.  Hernandez also argued that his attorney rendered ineffective assistance by, among other things, failing to advise him about and investigate an affirmative duress defense.

The district court denied Hernandez's § 2255 petition without a hearing.  This Court granted Hernandez a certificate of appealability on two issues: (1) "whether *Jones* applies retroactively, and thus whether the drug evidence should have been suppressed" and (2) "whether counsel's failure to investigate or advise Hernandez about a potentially successful duress defense, despite counsel's knowledge of facts that amount to duress, establishes that Hernandez received ineffective assistance and that his guilty plea was thus entered unknowingly and involuntarily."  We discuss each issue in turn.

## DISCUSSION

In a § 2255 appeal, this Court determines whether a conviction was obtained in violation of federal law or the United States Constitution.  We review the district court's factual findings for clear error and its conclusions of law *de novo*.  *United States v. Redd*, 562 F.3d 309, 311 (5th Cir. 2009).

With respect to Hernandez's 4th Amendment challenge, this Court granted a certificate of appealability on the issue of whether *United States v. Jones* should be applied retroactively in a postconviction proceeding under *Teague v. Lane*, 489 U.S. 288 (1989).  However, we may affirm the district court's denial of relief "on any ground supported by the record."  *Scott v.*

*Johnson*, 227 F.3d 260, 262 (5th Cir. 2000). Consequently, we need not reach the issue of whether *Jones* announced a new rule, which should be given retroactive effect. Even if *Jones* applies retroactively, its holding does not warrant relief in this case.

"[S]earches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *United States v. Andres*, 703 F.3d 829, 834 (5th Cir. 2013) (quoting *United States v. Davis*, ___ U.S. ___, 131 S.Ct. 2419, 2423-24 (2011). In February of 2008, it was objectively reasonable for agents conducting law enforcement activities within the Fifth Circuit to believe that warrantless GPS tracking of the kind involved in this case was permissible under binding circuit precedent. *See Andres*, 703 F.3d at 834-35; *see also United States v. Lujan*, ___ Fed App'x ___, 2014 WL 3974590 (5th Cir. Aug. 15, 2014). Specifically, our en banc decision in *United States v. Michael* held that an officer's reasonable suspicion of criminal activity is adequate to support the warrantless installation and monitoring of a tracking device similar to the GPS device used in this case. *See Michael*, 645 F.2d at 258. That decision was binding precedent at the time the DEA was engaged in its GPS monitoring and the facts obtained during the DEA's earlier investigation provided the requisite reasonable suspicion to justify its warrantless use while Hernandez was driving the truck to California. Accordingly, Hernandez's 4th Amendment challenge does not provide a basis to vacate his conviction.[3]

---

[3] The government also argues that Hernandez's 4th Amendment challenge is precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 481-82 (1976), which bars collateral review of a 4th Amendment claim where a federal habeas petitioner has been provided "an opportunity for full and fair litigation" of the issue during pretrial proceedings and on direct appeal. In response, Hernandez argues that he did not have a "full and fair" opportunity to litigate his claim because the Supreme Court did not issue its decision in *United States v. Jones* until after his appeal was decided and his conviction became final. Because we affirm the district court's judgment on different grounds, we need not decide whether this change of law prevented Hernandez from fully and fairly litigating

No. 13-10264

Additionally, Hernandez failed to show that his trial counsel was ineffective by failing to investigate or advise him about a potential duress defense. "[T]he two-part *Strickland v. Washington* test applies to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Thus, to make out a claim in this context a federal habeas petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's deficient representation prejudiced him by affecting the outcome of the plea process. *See id.*; *see also Tolett v. Henderson*, 411 U.S. 258, 266-68 (1973); *United States v. Thompson*, 44 F.3d 1004 (5th Cir. 1995); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993). "To meet the prejudice prong of the *Strickland* test the defendant may not simply allege but must affirmatively prove prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986) (internal quotations omitted); *see also United States v. Curtis*, No. 12-30819, 2014 WL 3444947, at *4 (5th Cir. July 15, 2014) ("A defendant must rely on more than bare allegations about counsel's failure to interview or produce a witness and must show that the witness's testimony, if offered, would have been exculpatory."). "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.

Hernandez relies on the affidavit that he submitted in the § 2255 proceedings before the district court in which he asserted that he agreed to transport drugs as a result of threats made against his sister-in-law, Ana

---

his 4th Amendment challenge. *See United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003); *Doeschler v. Estelle*, 616 F.2d 205, 207 (5th Cir. 1980).

Cornelio.[4] According to his affidavit, Hernandez "undertook transport of the subject pickup truck" because of threats against Cornelio. Hernandez considered these threats to be "imminent and impending credible threats of grave bodily harm . . . because the person making the threats, [his sister-in-law's] ex-husband, had previously repeatedly raped and assaulted her and she was in great fear for her life and safety." Hernandez alleged that he believed had no alternative but compliance with these threats "because the police had been previously unable to stop the attacks in question." These allegations are insufficient to demonstrate that Hernandez was prejudiced by his counsel's failure to pursue an affirmative duress defense.

To establish an affirmative defense based on duress, a defendant must present sufficient proof of four elements:

> (1) that the defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct; (3) that defendant had no reasonable legal alternative to violating the law; a chance both to refuse to do the criminal act and also to avoid the threatened harm; and (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

*United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998) (internal quotations and alterations omitted). In analyzing duress, "our decisions make it clear that the defense only arises if there is a real emergency leaving no time to pursue any legal alternative." *Id.* at 874; *see also United States v. Gant*, 691

---

[4] Hernandez provided this Court with an additional affidavit from his sister-in-law, which he did not submit to the district court below. We do not consider this affidavit as it was provided for the first time on appeal. *See Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999); *see also Preyor v. Stephens*, 537 Fed. App'x 412, 427 (5th Cir. 2013); *United States v. Reedy*, 393 Fed. App'x 246, 247 (5th Cir. 2010).

F.2d 1159, 1164 (5th Cir. 1982) (A defense of duress "may be asserted only by a defendant who was confronted with a crises . . . that did not permit a selection from among several solutions, some of which would not have involved criminal acts").    "Vague and necessarily self-serving statements of defendants or witnesses as to future good intentions or ambiguous conduct . . . do not support a finding" of duress.  *See United States v. Bailey*, 444 U.S. 394, 415 (1980); *see also Posada-Rios*, 158 F.3d at 875 (finding the generalized testimony of individuals involved in drug trafficking organization that the defendant was afraid to stay at home by herself and that she feared for her family's safety and that the drug trafficking "conspiracy did not allow members to withdraw" failed to raise an issue of duress).  "As long as a defendant's crises permitted a selection from among several solutions, some of which did not involve criminal acts, the necessity defense [of duress] must fail." *Posada-Rios*, 158 F.3d at 874 (internal quotations and alterations omitted).

Here, the vague assertions in Hernandez's affidavit lack sufficient factual specificity to demonstrate the availability of a duress defense.  To begin with, Hernandez failed to articulate the nature and substance of the threats that were made against Cornelio and the reasons Hernandez believed the threatened harm to be imminent.  Nor did Hernandez provide the identity of Cornelio's ex-husband or the relationship his threats had to the drug trafficking conspiracy in which Hernandez felt compelled to participate.[5]  As a result, Hernandez failed to demonstrate that the threats were related to the drug trafficking conduct for which he was convicted and that there was a causal relationship between his illegal conduct and an abatement of the threatened harm.  *See Gant*, 691 F.2d at 1164 ("If the criminal act cannot abate

---

[5] In his reply brief to this Court, Hernandez asserts that the individual who threatened Cornelio was her ex-husband "not her current husband, Angel [Hernandez], Appellant Hernandez's brother."  No further information is provided.

the threatened harm, society receives no benefit from the criminal conduct because it suffers the harm from both the crime and the threatened activity.").

In addition, Hernandez's affidavit failed to demonstrate that he had no reasonable alternative but to participate in the drug conspiracy. Although Hernandez alleged that the police had failed to stop the previous assaults against Cornelio, his affidavit did not describe the nature of the prior police involvement and the reason it had failed. Nor did the affidavit indicate why Hernandez could not have simply informed the police that he and Cornelio were involved in the drug trafficking organization in an effort to extricate themselves from the situation without further participation. Consequently, Hernandez's affidavit did not demonstrate the unavailability of this alternative and Hernandez failed to establish this element of duress. *See Posada-Rios*, 158 F.3d at 874-75 (holding that the defendant failed to establish a duress defense where she failed to explain why she could not contact the police); *Gant*, 691 F.2d at 1164 (holding that the defendant's failure to call the police precluded the defense of duress despite the fact that the police "had been slow to respond" previously).

Because Hernandez's affidavit failed to demonstrate the availability of a duress defense, he failed to show that this defense would have likely been successful at trial. He therefore failed to show that he was prejudiced by his counsel's failure to pursue the defense and that his choice to enter a guilty plea was affected by his counsel's representation. Thus, as Hernandez failed to satisfy the prejudice prong of the *Strickland* test, his conviction cannot be vacated on the basis of ineffective assistance of counsel.

Accordingly, the judgment of the district court is AFFIRMED.